# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| C. MCCLURE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-1794 |
| | § | |
| LIFE TIME FITNESS, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

This is a personal injury suit filed by Misha McClure for herself and on behalf of her minor son, who was injured in July 2012 in the childcare area at a Life Time Fitness center in Humble, Texas. Ms. McClure asserted negligence, gross negligence, common law and statutory premises liability, and negligent misrepresentation claims. Life Time Fitness moved for summary judgment, arguing that the claims are barred by a release Ms. McClure signed when she joined the center. (Docket Entry No. 28).

Based on the pleadings, the motion and response, the parties' submissions, and the applicable law, this court grants the motion in part and denies it in part. Specifically, the court grants Life Time Fitness's motion for summary judgment dismissing Ms. McClure's claims for negligence, common-law premises liability, and negligent misrepresentation, and denies the motion as to her gross negligence and statutory premises liability claims. The court grants Life Time Fitness's summary judgment motion as to the minor child's negligent misrepresentation claim and otherwise denies the motion. Finally, the court grants Life Time Fitness's motion for summary judgment on its counterclaim for fees incurred in defending against Ms. McClure's claims other than for gross

negligence and for statutory premises liability, and otherwise denies the motion. The reasons for these rulings are explained below.

**I.      Background**

Ms. McClure went to the Life Time Fitness center in Humble on July 28, 2012 for a personal-training session. She left her two-year-old son at the childcare area in the center, telling a childcare employee her son's age and explaining that it was his first time there. The employee told Ms. McClure that her son would be in an area for younger children. Thirty minutes later, a Life Time Fitness manager interrupted Ms. McClure's training session to tell her that her son had been in an accident in the older children's play area and that 911 had been called. Ms. McClure found her son with a Life Time Fitness childcare manager who was holding an ice pack on the child's ear. When the ice pack was removed, Ms. McClure saw that the child was missing a piece of his ear. He received five stitches.

When Ms. McClure joined Life Time Fitness, she signed a Member Usage Agreement. The Member Usage Agreement contained sections headed "**ASSUMPTION OF RISK**" and "**WAIVER OF LIABILITY**." The relevant parts read as follows:

> **ASSUMPTION OF RISK**. I understand that there are inherent **dangers, hazards, and risks of injury or damage in the use of Life Time's premises, facilities, equipment, services, activities or products,** whether available through membership dues or a separate fee.
> . . .
> I understand that the Risk and Injuries in the Use of Life Time Premises and Services (collectively, "Risks of Injury") **may be caused, in whole or in part, by the NEGLIGENCE OF LIFE TIME,** me, Minor Member(s), Other Member(s), Guest(s) and/or other persons. **[I] FULLY UNDERSTAND, AND VOLUNTARILY AND WILLINGLY ASSUME, THE RISKS OF INJURY**.

> **WAIVER OF LIABILITY**. On behalf of myself and my spouse/partner, children/Minor Members, Other Members, Guests, parents, guardians, heirs, next of kin, personal representatives, heirs and assigns, I hereby voluntarily and forever **release and discharge Life Time from,** covenant and **agree not to sue Life Time for,** and **waive, any claims**, demands, actions, causes of action, debts, damages, losses, costs, fees, expenses or any other alleged liabilities or obligations of any kind or nature, whether known or unknown (collectively, "Claims") **for any Injuries** to me, Minor Member(s), Other Member(s), or Guest(s) in the Use of Life Time Premises and Services **which arise out of, result from, or are caused by any NEGLIGENCE OF LIFE TIME,** me, any Minor Member(s), any Other Member(s), any Guest(s), and/or any other person . . . **(collectively, "Negligence Claims").**
>
> **A. Negligence Claims.** I understand that Negligence Claims include but are not limited to Life Time's (1) negligent design, construction (including renovation and alteration), repair maintenance, operation, supervision, monitoring, or provision of Life Time Premises and Services; (2) negligent failure to warn of or remove a hazardous, unsafe, dangerous or defective condition; (3) negligent failure to provide or keep premises in a reasonably safe condition; (4) negligent provision or failure to provide emergency care; (5) negligent provision of services; and (6) negligent hiring, selection, training, instruction, certification, supervision or retention of employees, independent contractors or volunteers; or (7) other negligent act(s) or omission(s).
>
> **B. Life Time's Fees and Costs.** I specifically agree that, if I (on my own behalf or on behalf of another, including an estate) assert a Negligence Claim against Life Time and/or breach my agreement not to sue Life Time, **I will pay all reasonable fees (including attorneys' fees), costs and expenses incurred by Life Time ("Life Time's Fees and Costs") to defend (1) the Negligence Claim(s) and** (2) all other Claims based on the same facts as the Negligence Claim(s).

The agreement also contained a section headed "**PARENT OR GUARDIAN AGREEMENT**." This section stated:

> If I am the **parent or legal guardian of a Minor Member,** I acknowledge and represent to Life Time that I have the right and authority to make decisions concerning the care, custody and control of each Minor Member, including but not limited to the right and

3

authority to execute this MUA on the Minor Member's behalf. By signing this MUA, I am binding each of my Minor Member(s) to its terms, including but not limited to the **ASSUMPTION OF RISK** [and] **WAIVER OF LIABILITY** . . . provisions.

The following text appeared directly above the signature line:

> **I HAVE READ, UNDERSTOOD, RECEIVED A COPY OF, AND AGREE TO ALL TERMS AND CONDITIONS OF THIS MUA, INCLUDING SPECIFICALLY THE ASSUMPTION OF RISK, WAIVER OF LIABILITY AND DEFENSE AND INDEMNIFICATION PROVISIONS UNDER WHICH I AM RELINQUISHING LEGAL RIGHTS.**

Ms. McClure's state-court petition alleged that Life Time Fitness negligently allowed her son to play in an area designated for older children. The petition alleged that in addition to the ear injury, which was treated with five stitches, the incident left him unable or unwilling to participate in certain activities and afraid to be in a new childcare facility. (Docket Entry No. 1, Ex. 2 at 2). Life Time Fitness did not file an answer within the period set by the Texas rules.

In April 2013, the state-court judge granted the McClures' motion for a no-answer default judgment against Life Time Fitness. Life Time Fitness removed the lawsuit to federal court in June 2013 and challenged the service of process and the no-answer default judgment. This court vacated the state-court default judgment in February 2014, finding that the service was defective and that entry of the no-answer default judgment was therefore void. Life Time Fitness then filed an answer and counterclaimed against Ms. McClure for breach of the Member Usage Agreement. (Docket Entry No. 21).

Life Time Fitness has moved for summary judgment, contending that the McClures' claims are barred by the release contained in the Member Usage Agreement and are unsupported by the evidence. Life Time Fitness also moved for summary judgment on its breach-of-contract counterclaim against Ms. McClure. Ms. McClure contends that the release does not bar her claims,

that the summary-judgment evidence supports recovery for both her and her son, and that she did not breach the Member Usage Agreement. Each argument and response is analyzed below.

## II. The Applicable Legal Standards

### A. Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's

5

claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

**III.    Analysis**

    **A.    The Timeliness of the McClures' Response to Life Time Fitness's Summary Judgment Motion**

Life Time Fitness argues that the court should disregard the McClures' response to the summary judgment motion because it was filed after the deadline to respond and without leave of court. (Docket Entry No. 30 at 2). The summary judgment motion was filed on September 12, 2014. (Docket Entry No. 28). The response was filed on October 13, 2014, ten days after it was due. (Docket Entry No. 29). Because the delay was not extensive, there is no prejudice to Life Time Fitness. Because a decision on the basis of default is disfavored, the court considers the McClures' response on the merits.

    **B.    The Waiver and Release**

The waiver and release contained in the Member Usage Agreement stated that the signer waived any claims for injuries to herself or to her minor children resulting from Life Time Fitness's negligence. (Docket Entry No. 28). Texas imposes a fair notice requirement on preinjury releases. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508–09 (Tex. 1993). A release that fails to satisfy the fair notice requirement is unenforceable as a matter of law. *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004). Fair notice requires (1) that a party seeking to enforce a release provision comply with the express negligence doctrine and (2) that the

6

provision be conspicuous. *Id.* The express negligence doctrine requires a party releasing potential claims against another party for its negligence to express that intent in conspicuous and unambiguous terms in the four corners of the agreement. *Id.* Conspicuousness requires the releasing language to be written and formatted so that a reasonable person in the position of the person against whom the release is to operate would notice it. *Id.*; *Dresser,* 853 S.W.2d at 508.

Ms. McClure agrees that the waiver and release provisions of the Member Usage Agreement meet the Texas fair notice requirements, but argues that the provisions do not cover her gross negligence claims. (Docket Entry No. 29 at 2). Several Texas appellate courts have held that preinjury releases of gross negligence claims violate public policy. *See Van Voris v. Team Chop Shop, LLC*, 402 S.W.3d 915, 924–25 (Tex. App. — Dallas 2013, no pet.); *Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 336 (Tex. App. — Houston [14th Dist.] 2006, no writ); *Smith v. Golden Triangle Raceway*, 708 S.W.2d 574, 576 (Tex. App. — Beaumont 1986, no writ); *accord Memorial Med. Ctr. of East Texas v. Keszler, M.D.*, 943 S.W.2d 933 (Tex. 1997) (citing *Golden Triangle Raceway*, 708 S.W.2d at 576). Other Texas appellate courts have held that when a preinjury waiver releases claims for "negligence," claims for gross negligence are not waived. *See Del Carmen Canas v. Centerpoint Energy Res. Corp.*, 418 S.W.3d 312, 326–27 (Tex. App. — Houston [14th Dist.] 2013, no pet.); *Akin v. Bally Total Fitness Corp.*, No. 10-05-00280-CV, 2007 WL 475406, at *3 (Tex. App. — Waco Feb. 14, 2007, pet. denied); *Rosen v. Nat'l Hot Rod Ass'n*, No. 14-94-00775-CV, 1995 WL 755712, at *7 n. 1 (Tex. App. — Houston [14th Dist.] Dec. 21, 1995, writ denied). In *Newman v. Tropical Visions, Inc.*, the Texas Court of Appeals for San Antonio held to the contrary, finding that the plaintiff's preinjury waiver of negligence claims also barred its gross negligence claims. *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 722 (Tex. App. — San Antonio 1994, writ denied); *see also Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 127

(Tex. App. — Houston [1st Dist.] 2002, pet. denied) (finding *Newman* persuasive). The court noted that the plaintiff had not raised the express negligence rule in its pleadings, and the court emphasized that its opinion did not address or take a position on whether a preinjury waiver of gross negligence claims violated public policy. *Id.*

The Texas Supreme Court has not ruled on this issue. The guidance the Texas appellate court case law provides, however, gives a reliable basis for making an *Erie* prediction about how the Supreme Court would rule if faced with the question. "When making an *Erie*-guess in the absence of explicit guidance from the state courts, [this court] must attempt to predict state law, not to create or modify it." *Assoc. Inter. Ins. Co. v. Blythe*, 286 F.3d 780, 783 (5th Cir. 2002) (citation omitted). Based on the Texas cases holding that waivers of negligence claims do not give fair notice of an intent to waive gross negligence claims, and the cases holding that preinjury releases of gross negligence claims are contrary to public policy, this court holds that the Member Usage Agreement Ms. McClure signed did not release Life Time Fitness from liability for her gross negligence claims, including the premises liability claim based on the Recreational Use Statute, which requires proof of gross negligence. *See* TEX. CIV. PRAC. & REM. CODE §§ 75.002(c)–(d), 101.058; *State v. Shumake*, 199 S.W.3d 279, 289 (Tex. 2006).

By contrast, Ms. McClure's claims for negligence, negligent misrepresentation, and common law premises liability to invitees fall within the scope of the waiver and release. Summary judgment is granted on these claims but denied as to Ms. McClure's gross negligence and statutory premises liability claims.

Life Time Fitness also argued that the child's claims were barred by the waiver and release Ms. McClure signed. A preinjury release executed by a minor child's parent is not enforceable to release claims against a commercial enterprise for the minor child's injuries. *See Paz v. Life Time*

*Fitness, Inc.*, 757 F. Supp. 2d 658 (S.D. Tex. 2010) (making an *Erie* prediction); *Munoz v. II Jaz Inc.*, 863 S.W.2d 207 (Tex. App. — Houston [14th Dist.] 1993, no writ). The child's claims are not barred on this basis.

### B. The Sufficiency of the Evidence

Life Time Fitness also moves for summary judgment on the basis that there is no evidence to support either Ms. McClure's or her child's claims.

Life Time Fitness contends that the child, who was two years old at the time, was too young to rely on any statement made by Life Time Fitness and therefore cannot prevail on a negligent misrepresentation claim. (Docket Entry No. 23). In response, Ms. McClure argues that her own reliance should be imputed to her son. (Docket Entry No. 29 at 4–5). Although one party's knowledge of a misrepresentation may be imputed to another under certain circumstances, none of which are present here, Texas courts do not recognize a theory of imputed or vicarious reliance. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 924 (Tex. 2010) (in the context of an agency relationship). The McClures have not identified any evidence of a misrepresentation Life Time Fitness made to the child on which he did or could have reasonably relied. Summary judgment is granted on the child's negligent misrepresentation claim.

Life Time Fitness also seeks summary judgment on the child's remaining claims, contending that it breached no duty owed to him and that no condition at the childcare facility posed an unreasonable risk of harm. The McClures did not specifically respond to the motion for summary judgment on these claims. (Docket Entry No. 29). In their pleadings, the McClures alleged that Life Time Fitness failed to provide a safe childcare area. (Docket Entry No. 23). The summary judgment evidence in the record is Ms. McClure's affidavit and the Member Usage Agreement she signed. In her affidavit, Ms. McClure states that there was an injury involving her son and she was told by an unnamed employee that he was injured in a play area designated for children above his age.

9

(Docket Entry No. 29, Ex. 2). Although the record is scant, it is sufficient to withstand summary judgment as to the child's claims other than for negligent misrepresentation.

C. **Life Time Fitness's Counterclaims**

Life Time Fitness moves for summary judgment on its breach-of-contract counterclaim against Ms. McClure. Life Time Fitness first argues that because Ms. McClure answered with only a general denial, the counterclaim allegations should be deemed admitted. (Docket Entry No. 28 at 8). "General denials are uncommon in federal court because 'situations in which the complaint can be completely controverted are quite rare.'" *Mary Kay, Inc. v. Dunlap*, 2012 WL 2358082, at *7 (N.D. Tex. June 21, 2012) (quoting 5 WRIGHT & MILLER § 1265, at 549). Life Time Fitness argues that by filing a general denial, Ms. McClure was "admitting the operative facts" of the counterclaim. Life Time Fitness seeks summary judgment on this basis.

"As directed by Rule 8 [of the Federal Rules of Civil Procedure], the answer should contain only two things: (1) a response (admitting, denying, or claiming insufficient knowledge) to the averments in the complaint; and (2) a statement of all affirmative defenses." *Software Publishers Ass'n v. Scott & Scott, LLP*, 2007 WL 2325585, at *2 n. 4 (N.D. Tex. Aug.15, 2007) (citing FED. R. CIV. P. 8(b)–(c)). "A party that intends in good faith to deny all the allegations of a pleadings — including the jurisdictional grounds — may do so by a general denial." FED. R. CIV. P. 8(b)(3). "A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted." *Id.*

"Granting summary judgment when a party fails to respond to the opposing party's summary judgment motion is comparable to granting a default judgment." *Tolliver v. Liberty Mut. Fire Ins. Co.*, No. 2:06-0904, 2008 WL 545018, at *1 (S.D. Ohio Feb. 25, 2008). "'A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.'" *McCarty v. Zapata County*, 243 F. App'x 792, 794 (5th Cir. 2007) (per curiam) (quoting *Lewis v.*

10

*Lynn*, 236 F.3d 766, 767 (5th Cir. 2001)). Default judgment is a drastic remedy that should be granted only in extreme situations. *Warren v. Johnson*, 244 F. App'x 570, 571 (5th Cir. 2007) (per curiam) (citing *Lewis*, 236 F.3d at 767). Life Time Fitness has not shown such an extreme situation. Life Time Fitness's motion for summary judgment on its counterclaim will be considered on the merits.

The Member Usage Agreement Ms. McClure signed when she joined Life Time Fitness contained a clause headed "Life Time's Fees and Costs." This clause stated that if Ms. McClure asserted a negligence claim against Life Time Fitness, she would pay "all reasonable fees (including attorney's fees), costs, and expenses incurred by Life Time ("Life Time's Fees and Costs") to defend (1) the Negligence Claim(s) and (2) all other Claims based on the same facts as the Negligence Claim(s)." Ms. McClure argues that she did not breach the Member Usage Agreement because she asserted claims for gross negligence.

As discussed above, although Ms. McClure's claims for gross negligence and premises liability under the Recreational Use Statute are not barred by the waiver and release, her remaining claims are barred. Ms. McClure asserted claims against Life Time Fitness for negligence, negligent misrepresentation, and common law premises liability to invitees, despite agreeing that she would not do so. Life Time Fitness is entitled to the damages provided for in the Member Usage Agreement: the fees it reasonably incurred in defending solely against Ms. McClure's claims for negligence, negligent misrepresentation, and common-law premises liability. Life Time Fitness is not entitled to any fees incurred in defending against the child's claims, which were not waived by the Member Use Agreement. Nor is Life Time Fitness entitled to any fees incurred to defend against Ms. McClure's claims for gross negligence and for statutory premises liability. The only fees at issue are those that Life Time Fitness would have incurred had Ms. McClure asserted only the claims waived by the release.

## IV. Conclusion

Summary judgment is granted to Life Time Fitness on Ms. McClure's claims for negligence, negligent misrepresentation, and common law premises liability to invitees. Summary judgment is denied on Ms. McClure's claims for gross negligence and for premises liability under the Recreational Use Statute. Summary judgment is granted on the minor child's negligent misrepresentation claim and otherwise denied. Life Time Fitness's motion for summary judgment on its counterclaim is granted only for reasonable fees incurred in defending against Ms. McClure's negligence, negligent misrepresentation, and common law premises liability claims, and is otherwise denied.

SIGNED on December 3, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge